

**SO ORDERED.**

**SIGNED this 26 day of October, 2018.**

David M. Warren
United States Bankruptcy Judge

---

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                    CASE NO. 18-00677-5-DMW

SUNITA ANJU DEV

                                       CHAPTER 13

        DEBTOR

## AMENDED
## ORDER DETERMINING TERMINATION OF AUTOMATIC STAY
## AND GRANTING RELIEF FROM CO-DEBTOR STAY

These matters come before the court upon the Motion for *In Rem* Relief from Stay Applying 11 U.S.C. § 362(d)(4) ("CFCU Stay Motion") filed by Coastal Federal Credit Union ("CFCU") on March 29, 2018 and the Response thereto filed by Sunita Anju Dev ("Debtor") on April 16, 2018 and upon the Motion for Relief from Stay ("Dev Stay Motion") filed by Prakash Dev ("Mr. Dev") on May 3, 2018 and the Responses thereto filed by the Debtor on May 18, 2018 and June 12, 2018, respectively. The court conducted a hearing on the Dev Stay Motion on June 5, 2018 in Raleigh, North Carolina and continued the hearing until June 13, 2018 in Raleigh, North Carolina, at which time the court conducted a joint hearing on the Dev Stay Motion and the CFCU Stay Motion. Cort I. Walker, Esq. appeared for the Debtor, S. Troy Staley, Esq. appeared for CFCU, Mr. Dev appeared *pro se*, and Michael B. Burnett, Esq. appeared on behalf of Chapter 13

trustee John F. Logan, Esq.  Based upon the court record, evidence presented, and arguments of the parties, the court makes the following findings of fact and conclusions of law:

## I. BACKGROUND

The Debtor and Mr. Dev were married on May 6, 1992.  During their marriage, on June 24, 2008, they executed a promissory note ("Note") in favor of CFCU for the original principal amount of $189,000.00.  The Note requires monthly payments to CFCU in the amount of $1,118.01 for a period of 30 years.  Repayment of the Note is secured by a Deed of Trust executed by the Debtor and Mr. Dev which encumbers real property ("Property") located at 404 Silvergrove Drive, Cary, North Carolina.  CFCU properly perfected its lien on the Property by recording the Deed of Trust with the Wake County Register of Deeds.

The Property was the marital residence of the Debtor and Mr. Dev until July 1, 2014, at which time the parties separated, and Mr. Dev relocated.  The Debtor and their minor child remained and continue to reside at the Property.  Upon petition of Mr. Dev, the Wake County District Court, File Number 13 CVD 11338, granted an absolute divorce on September 4, 2015.

Since her separation from Mr. Dev, the Debtor has filed in this district three petitions for relief under Chapter 13 of the United States Bankruptcy Code:[1]

(1)     Case Number 15-00158-5-SWH filed on January 9, 2015 and dismissed on October 15, 2015 for failure to make plan payments;

(2)     Case Number 16-02500-5-DMW ("2016 Bankruptcy") filed on May 11, 2016 and dismissed on September 12, 2017 for failure to make plan payments; and

(3)     The current case filed on February 13, 2018.

---

[1] Except for within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

Each of these cases was filed to, among other reasons, prevent foreclosure of the Property by CFCU. As stated in the CFCU Stay Motion, "[t]he initial foreclosure action was initiated by CFCU in 2016, but due to the bankruptcy filings by the debtor, CFCU has not been successful in completing the process. The prior filings were both filed during the 10-day upset bid period, rendering the foreclosure sales invalid." CFCU Stay Motion, ¶ 12, ECF No. 15.

In each case, the Debtor proposed a Chapter 13 plan providing for monthly conduit payments on the Note and a cure of its pre-petition arrearage. According to a Proof of Claim filed by CFCU in this case on April 30, 2018, at the time of the Debtor's petition, the total balance due under the Note was $200,605.63, and the Note was in default as follows:

| | |
|---|---|
| 32 monthly payments of $1,118.01 | $35,776.32 |
| Fees | 4,574.33 |
| Funds in Suspense | (55.68) |
| Total Pre-petition Arrearage | $40,294.97 |

The scheduled value of the Property securing the Note is $250,000.00.

The CFCU Stay Motion requests relief from the automatic stay imposed by § 362(a) to allow CFCU to complete a foreclosure of its security interest in the Property. Although the CFCU Stay Motion does not pray specifically for relief from the co-debtor stay under § 1301, CFCU's counsel clarified at the hearing that CFCU believes it also requires this relief to foreclose the Property and orally amended the CFCU Stay Motion to include this additional request. CFCU contends that it lacks adequate protection in the Property due to the default on the Note, constituting cause for relief pursuant to § 362(d)(1). Additionally, CFCU asserts that the Debtor's third bankruptcy petition was filed in bad faith, is an abuse of the Bankruptcy Code, and is part of a scheme to delay, hinder and defraud CFCU; therefore, the requested *in rem* relief should be binding in future cases filed within two years pursuant to § 362(d)(4)(B). CFCU notes that upon similar motions filed in the Debtor's two prior cases, the parties executed consent orders

3

conditioning the continuance of the automatic and co-debtor stays upon timely plan payments for a period of 12 months.  The Debtor defaulted in her obligations under both consent orders, resulting not only in modification of the applicable stays but dismissal of the cases.

As part of his action for divorce, on December 15, 2014, Mr. Dev filed a request for equitable distribution of marital property, and in the Dev Stay Motion, he seeks relief from the automatic stay to continue the equitable distribution proceeding in state court.  Mr. Dev also prays the court to award him sanctions against the Debtor, asserting that her repeated bankruptcy filings and default on the Note have injured his credit rating and prevented him from obtaining a loan to buy new property, despite his being able to afford to do so.  He wants the Property sold to satisfy the Note and outstanding *ad valorem* tax obligations.  The Debtor counters that absent agreement of the parties, the state court cannot order the Property sold, citing *Miller v. Miller*, 799 S.E.2d 890, 903 (N.C. App. 2017) (holding that for equitable distribution, the court's role is to classify, value, and distribute property, not simply to order that it be sold).  She opposes stay relief, arguing that allowing Mr. Dev to continue the equitable distribution action will be costly and could only result in a dischargeable claim against her.  The Debtor further contends that there are no grounds for the imposition of sanctions.

At the initial hearing on the Dev Stay Motion, the court questioned *sua sponte* whether the automatic stay is even in effect, because this case was filed within a year of the 2016 Bankruptcy's dismissal and the stay ostensibly terminated on the 30th day after the petition pursuant to § 362(c)(3)(A).  The Debtor responded that any termination of the automatic stay under § 362(c)(3)(A) does not apply to actions against property of the estate such as the Property, citing this district's cases of *In re Paschal*, 337 B.R. 274 (Bankr. E.D.N.C. 2006) and *In re Jones*, 339 B.R. 360 (Bankr. E.D.N.C. 2006).  To allow it time to review and consider this issue not raised or

briefed by the parties, the court continued the hearing on the Dev Stay Motion to be heard jointly with the pending CFCU Stay Motion, noting that CFCU would be equally affected by determination of whether the automatic stay remained in effect as to actions against the Property. At that subsequent hearing, CFCU and the Debtor announced that they had reached a settlement for consideration by the court which conditioned the continuance of the automatic stay and the co-debtor stay upon the Debtor meeting certain terms and conditions.

## II. JURISDICTION

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). *See In re Nexus Commc'ns, Inc.*, 55 B.R. 596, 598 (Bankr. E.D.N.C. 1985) (noting that a motion to lift the automatic stay is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G)). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## III. DISCUSSION

Upon the filing of a bankruptcy petition, the automatic stay imposed by § 362(a) operates to stay, *inter alia*—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title;

. . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

11 U.S.C. § 362(a).  The automatic stay applies generally to both the CFCU Stay Motion and the Dev Stay Motion.  *See In re Lordship Dev., LLC*, 403 B.R. 772, 773 (Bankr. E.D.N.C. 2008) (holding that the filing of a bankruptcy petition stays automatically a North Carolina foreclosure sale of property of the estate pursuant to §§ 362(a)(3) and (4), even if the petition is filed during the statutory upset bid period); *In re Wasserman*, No. 14-03676-5-DMW, 2015 WL 1408654, at *1 (Bankr. E.D.N.C. Mar. 25, 2015) (finding that a bankruptcy petition stays equitable distribution proceedings under § 362(a)(1)).

"The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized." *In re Seaton*, 462 B.R. 582, 591 (Bankr. E.D. Va. 2011) (citing *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988)).  Unfortunately, the broad protections of the automatic stay, while aiding honest debtors in obtaining a fresh start, can foster abuse of the Bankruptcy Code by allowing an individual to file a petition for the sole purpose of invoking the automatic stay but with no intention to comply with the obligations of a debtor.  Such a bad faith filing will usually be dismissed in due course, at which point the debtor simply files a new petition.

A.  Limitations of the Automatic Stay in Repeat Filings Under § 362(c)(3)(A)

With section 302 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), titled "Discouraging Bad Faith Repeat Filings," Congress attempted to curb debtor abuse and limit the protections of the automatic stay to serial filers by adding the following restriction:

Except as provided in subsections (d), (e), (f), and (h) of this section—

. . .

(3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

6

> (A) the stay under subsection (a) with respect to any *action taken* with respect to a debt or property securing a debt or with respect to any lease shall terminate *with respect to the debtor* on the 30th day after the filing of the later case.

11 U.S.C. § 362(c)(3) (emphases added). The legislative history of BAPCPA states that "Section 302 of [BAPCPA] amends section 362(c) of the Bankruptcy Code to terminate the automatic stay within 30 days in a Chapter 7, 11, or 13 case filed by or against an individual if such individual was a debtor in a previously dismissed case pending within the preceding one-year period." H.R. REP. NO. 109-31, pt. 1, at 69 (2005).

The Debtor's current petition was filed within a year of dismissal of the 2016 Bankruptcy, triggering the application of § 362(c)(3)(A). The Debtor did not seek timely an extension of the automatic stay beyond 30 days pursuant to § 362(c)(3)(B),[2] presumably relying on *Paschal* and *Jones* for her position that § 362(c)(3)(A) does not cause expiration of the automatic stay as to the Property. In these cases, the Honorable A. Thomas Small navigated in the wake of BAPCPA the specific language of § 362(c)(3)(A) to determine to what extent the automatic stay terminates on

---

[2] This subsection provides that—

> on motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any and all creditors (subject to conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed . . ..

11 U.S.C. § 362(c)(3)(B). The local rules for this district allow the court, in its discretion, to rule on a motion made under § 362(c)(3)(B) without hearing if:

> (1) the debtor files a motion for continuation of the automatic stay within 5 days of the petition date;
>
> (2) no objection is filed by a party in interest;
>
> (3) the motion is accompanied by a notice of motion and the debtor's affidavit or unsworn declaration under 28 U.S.C. § 1746 with sufficient facts to support the motion; and
>
> (4) the motion and accompanying documents are timely served on all creditors and the trustee, if one has been appointed, contemporaneous with the filing of the motion.

E.D.N.C. LBR 4001-1(d).

the 30th day after a petition filed within one year of the dismissal of a previous case. At the outset, the Judge Small found that—

> in an Act [i.e., BAPCPA] in which head-scratching opportunities abound for both attorneys and judges alike, § 362(c)(3)(A) stands out. It uses the amorphous phrase "with respect to" a total of four times in short order and raises questions about the meaning of the words "action taken," and "to the debtor." The language of the statute is susceptible to conflicting interpretations, and if read literally, would apply to virtually no cases at all. In sum, it's a puzzler.

*Paschal*, 337 B.R. at 277.

### 1. § 362(c)(3)(A) and "Action Taken"

In *Paschal*, the court focused on the phrase "action taken" and compared the word "action" to the broader term "act" used in other subsections of § 362. Applying established principles of statutory construction, the court concluded that—

> the term "action" means a formal action, such as a judicial, administrative, governmental, quasi-judicial, or other essentially formal activity or proceeding. Furthermore, the action with respect to which the stay terminates is an "action taken," which means an action in the past, prior to the filing of the debtor's bankruptcy petition.

*Id.* at 280. This interpretation is logical, because creditors who have spent time and money to initiate a legal process, which is frustrated by repeated bankruptcy filings, should be protected over those who have not expended such resources. Following this analysis, Mr. Dev's equitable distribution action and CFCU's foreclosure proceeding, each initiated pre-petition, are the types of "actions taken" which the automatic stay terminates under § 362(c)(3)(A). Any reliance upon *Paschal* to support the Debtor's position that the automatic stay applicable to these creditors has not terminated is unfounded. Contrarily, in *Paschal*, no creditor actions were taken prior to the debtor's bankruptcy, so the court held that no protections of the automatic stay were terminated in the case but noted that—

8

> [t]here remain other issues with respect to § 362(c)(3)(A).  Yet to be decided is the meaning in § 362(c)(3)(A) of the term "with respect to the Debtor."  If the stay is lifted as to an "action taken," does the stay terminate with respect to the property of the estate or only with respect to the debtor?  That is an interesting question that need not be decided in this case.

*Id.* at 281.  Less than three months later, Judge Small had the opportunity to address this precise issue in *Jones*.

2. § 362(c)(3)(A) and "With Respect to the Debtor"

In the present case, the parties do not dispute that the Property constitutes property of the estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Although Mr. Dev's ultimate goal may be to see the Property sold, his equitable distribution action is against the Debtor personally and not the Property.  *See Perlow v. Perlow*, 128 B.R. 412, 416 (E.D.N.C. 1991) (holding that a spouse's statutory right to equitable distribution does not create a lien on specific marital property but is a general unsecured claim in a bankruptcy proceeding, regardless of whether the claim has been reduced to judgment).  The automatic stay of the equitable distribution action terminated on the 30th day after the Debtor's petition, making the Dev Stay Motion moot.  With respect to the CFCU Stay Motion, however, if § 362(c)(3)(A) does not terminate a stay of action taken against property of the estate, then CFCU remains stayed from continuing its foreclosure of the Property.

a. *Jones* and the Majority View

In *Jones*, the court turned its attention to the words "with respect to the debtor" contained within § 362(c)(3)(A).  The court began by noting that the subsections of § 362(a) differentiate clearly between the stay of acts against the debtor, against property of the debtor, and against

9

property of the estate, and the distinction is made in other subsections of § 362 and in § 521(a)[3].

*Id.* at 363-64.  Next, the court compared the language of § 362(c)(3)(A) to the more expansive language of § 364(c)(4)(A)(i) which provides that—

> if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case . . . .

11 U.S.C. § 362(c)(4)(A)(i).  This subsection contains no "with respect to" limitations like within § 362(c)(3)(A), and the court observed that Congress's "use of a particular phrase in one statute but not in another 'merely highlights the fact that Congress knew how to include such a limitation when it wanted to.'" *Jones*, 339 B.R. at 364 (quoting *Paschal*, 337 B.R. at 279).  The court further relied upon the United States Supreme Court's directive that "[w]here Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (internal quotation marks and alterations omitted)).  The court "was persuaded that the difference meant that the scope of the stay termination under § 362(c)(3)(A) is different and more limited than the stay termination in § 362(c)(4)(A)(i)." *Id.* (citing *Paschal*, 337 B.R. at 278-79).

As it did in *Paschal*, the court recognized that "[i]t is an axiom of statutory interpretation that the plain meaning of an unambiguous statute governs, barring exceptional circumstances." *Id.* (citing *Wachovia Bank, N.A. v. Schmidt*, 388 F.3d 414, 416 (4th Cir. 2004)).  As a summation of its analysis, the court stated as follows:

---

[3] An unnumbered or "hanging" paragraph contained within § 521(a) provides that if an individual Chapter 7 debtor does not reaffirm or redeem property within 45 days as required by § 521(a)(6), then "the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected . . . ." 11 U.S.C. § 521(a).

> Section 362(c)(3)(A) as a whole is not free from ambiguity, but the words "with respect to the debtor" in that section are entirely plain; a plain reading of those words makes sense and is entirely consistent with other provisions of § 362 and other sections of the Bankruptcy Code.  Section 362(c)(3)(A) provides that the stay terminates "with respect to the debtor."  *How could that be any clearer?*

*Id.* at 363 (emphasis added).  The court did not consider legislative history, because it found the statute's language clear; however, the court admitted that BAPCPA's legislative history favors the opposing arguments that § 362(c)(3)(A) terminates all the protections of the automatic stay under § 362(a). *Id.* at 364.

With *Jones*, this district, during the early months following the enactment of BAPCPA, joined the United States Bankruptcy Court for the Western District of Tennessee in holding that under § 362(c)(3)(A), the automatic stay terminates as to actions taken against the debtor and against property of the debtor but not as to actions taken against property of the estate. *See In re Johnson*, 335 B.R. 805 (Bankr. W.D. Tenn. 2006).  The *Johnson* court found guidance from § 362(c)(1) which provides that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1).  The court concluded that—

> [w]hen read in conjunction with subsection (1), . . . the plain language of § 362(c)(3)(A) dictates that the 30-day time limit only applies to "debts" or "property of the debtor" and not to "property of the estate."  As a result, the automatic stay continues to protect "property of the estate" as long as it remains "property of the estate."

*Johnson*, 335 B.R. at 806.  Many other jurisdictions followed suit, and *Jones* quickly became known as a pioneer case of what has become the majority interpretation of § 362(c)(3)(A). *See, e.g.*, *Witkowski v. Knight (In re Witkowski)*, 523 B.R. 291 (B.A.P. 1st Cir. 2014); *Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813 (B.A.P. 10th Cir. 2008); *Jumpp v Chase Home Fin., LLC (In re Jumpp)*, 356 B.R. 789 (B.A.P. 1st Cir. 2006); *In re Roach*, 555 B.R. 840 (Bankr. M.D.

11

Ala. 2016); *In re Scott-Hood*, 473 B.R. 133 (Bankr. W.D. Tex. 2012); *In re Alvarez*, 432 B.R. 839 (Bankr. S.D. Cal. 2010); *In re Dowden*, 429 B.R. 894 (Bankr. S.D. Ohio 2010); *In re Stanford*, 373 B.R. 890 (Bankr. E.D. Ark. 2007); *In re Tubman*, 364 B.R. 574 (Bankr. D. Md. 2007); *In re Rice*, 392 B.R. 35 (Bankr. W.D.N.Y. 2006); *In re Hollingsworth*, 359 B.R. 813 (Bankr. Utah 2006); *In re Pope*, 351 B.R. 14 (Bankr. D.R.I. 2006); *In re Gillcrese*, 346 B.R. 373 (Bankr. W.D. Pa. 2006); *In re Harris*, 342 B.R. 274 (Bankr. N.D. Ohio 2006); *In re Moon*, 339 B.R. 668 (Bankr. N.D. Ohio 2006).[4]

Judge Small's analysis in *Jones* is thorough, well-reasoned, and persuasive, and when presented by the Debtor, this court almost followed obligingly its precedent; however, it was stopped short by a nagging sense that the result is at odds with the title of section 302 of BAPCPA: "Discouraging Bad Faith Repeat Filings." The court undertook a renewed examination of § 362(c)(3)(A) and discovered an alternative minority interpretation of "with respect to the debtor," using a more refined ocular prescription than that used by Judge Small.

b. *Jupiter* and the Minority View

A few months after *Jones*, the Honorable John E. Waites of the neighboring United States Bankruptcy Court for the District of South Carolina rejected boldly the emerging view that § 362(c)(3)(A) does not operate to terminate the automatic stay with respect to property of the estate, finding that such interpretation "is demonstrably at odds with Congress's intent to deter bad faith, successive filings, fails to consider the context of § 362(c)(3) as a whole, and fails to account for the ambiguities in § 362(c)(3)(A)." *In re Jupiter*, 344 B.R. 754, 762 (Bankr. D.S.C. 2006). Judge Waites agreed that the plain meaning of an unambiguous statute governs barring exceptional circumstances but noted further that "[i]f a statute is ambiguous, the Court may resort to legislative

---

[4] Most of these opinions were issued within a year of *Jones* and unfortunately lack a diversified analysis.

history to determine the meaning of the statute.  Excepted from the plain meaning approach is when the application of a statute would produce a result demonstrably at odds with the intention of the drafters." *Id.* at 759 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)).

The *Jupiter* court believed that under a plain meaning examination of § 362(c)(3)(A), the operative and controlling word is that the stay under § 362(a) "terminates," and the remaining language of "with respect to the debtor" defines which debtor is affected by the provision, because "in a joint case, a 'debtor' may not necessarily mean both debtors if one debtor did not have a case dismissed within the year prior to the current petition date." *Id.* (citations omitted).  The United States Bankruptcy Appellate Panel of the Ninth Circuit elaborated that "[b]ecause section 362(c)(3) begins by referencing either a 'single or joint case,' the language 'with respect to the debtor' in section 362(c)(3)(A) simply distinguishes between the debtor and the debtor's spouse." *Reswick v. Reswick (In re Reswick)*, 446 B.R. 362, 366 (B.A.P. 9th Cir. 2011) (citing *Jupiter*, 344 B.R. at 759; *In re Daniel*, 404 B.R. 318, 326 (Bankr. N.D. Ill. 2009)).  "Keeping this introduction in mind, 'with respect to the debtor' in section 362(c)(3)(A) is best interpreted as meaning that the stay terminates as to a repeat-filing debtor, but not as to the debtor's spouse who is not a repeat filer." *Id.* at 369.

The United States Bankruptcy Court for the Eastern District of New York presented recently an astute analysis of § 362(c)(3)(A) in *In re Bender*, 562 B.R. 578 (Bankr. E.D.N.Y. 2016).  In this case, the Honorable Robert E. Grossman criticized both the majority and the minority for focusing on the phrases "property of the debtor" and "property of the estate," neither of which is used in the statute.  Judge Grossman instead focused on the language that the stay under § 362(a) terminates "with respect to any action taken *with respect to a debt or property*

13

*securing such debtor or with respect to any lease.*" *Id.* at 580 (quoting 11 U.S.C. § 362(c)(3)(A)

(emphasis added)).  He explained:

> The focus of the Court's analysis is on *specific actions* with respect to *specific property*, not the broader categories of property of the estate or property of the debtor.  In other words, the stay is lifted "with respect to a debt *or property securing such debt*" and with respect to leases—regardless of whether the property or the least is property of the estate or property of the debtor.  To limit the effect of § 362(c)(3)(A) to the debtor or property of the debtor would so limit its effectiveness as to not support what this Court believes to be, the congressional intent to protect the secured creditor or lessor seeking to continue judicial, administrative or other proceedings commenced prepetition with respect to debts, property securing such debts or leases.
>
> This does not mean that a two time repeat filer can gain no protection for the § 362(a) stay.  However, it is the debtor now that must come to the Court to seek protection.  In the case of a two time repeat filing, rather than requiring the secured creditor to seek relief under § 362(d) the burden shifts to the debtor to affirmatively seek to impose the stay under § 362(c)(3)(B), or the stay will be lifted on the 30th day by operation of law as to real property foreclosures, evictions and other actions against secured collateral.

*Id.* (emphasis in original) (quoting 11 U.S.C. § 362(c)(3)(A) (emphasis added)).

The court finds the now-established minority interpretation of § 362(c)(3)(A) introduced

by *Jupiter* to be more logical and consistent with legislative intent than that taken previously by

Judge Small in *Jones*.  As recognized by the court in *Reswick*, the majority interpretation renders

§ 362(c)(3)(A) devoid of any practical effect, because—

> [v]ery few creditors would seek to pursue only the debtor personally, or property of the debtor.  Indeed, this interpretation would provide no meaningful relief to creditors in chapter 13 cases, where repeat filings are most prevalent.  Creditors in a chapter 13 case could take no action against property that the debtor owned at the time the case was commenced, because it is property of the estate under section 541(a)(1), and they could take no action against property that the debtor acquired post-petition because it would also constitute property of the estate under section 1306(a).

*Reswick*, 446 B.R. at 368.  As noted by the United States Bankruptcy Court for the Northern

District of Georgia, "Congress could not have intended an exception that would swallow the rule

. . . [t]herefore, reading the statute in light of Congressional intent and the statutory scheme produces a sensible result that is not inconsistent with the language of the statute." *In re Keeler*, 561 B.R. 804, 806-07 (citing *St. Anne's Credit Union v. Ackell*, 490 B.R. 141, 145 (D. Mass. 2013) (finding the purpose of the statute is not well served by "excluding from the deterrent penalty actions against the bankruptcy estate and including only actions against the debtor personally and his other property outside the estate"); *In re Curry*, 362 B.R. 394, 400-01 (Bankr. N.D. Ill. 2007) (finding the language susceptible to multiple interpretations, requiring the adoption of an interpretation consistent with the overall statutory scheme); *In re McKeal*, No. 14-62113, 2014 WL 6390712, at *2 (Bankr. N.D. Ohio Nov. 14, 2014) (adopting the interpretation that "with respect to the debtor" refers to the co-debtor only if the co-debtor had a prior case that year, which best serves the purpose of BAPCPA) (other citations omitted)).

In *Daniel*, the United States Bankruptcy Court for the Northern District of Illinois looked beyond BAPCPA's legislative history to that of the never-passed House of Representatives' Bankruptcy Reform Act of 1998 and Senate's companion Consumer Bankruptcy Reform Act of 1998. Each bill contained a section virtually identical to § 362(c)(3)(A) that was drafted to address abuse identified by a National Bankruptcy Review Commission created by Congress as part of the Bankruptcy Reform Act of 1994. *Daniel*, 404 B.R. at 327. This Commission found that—

> Some debtors file for Chapter 13 . . . on the eve of a foreclosure or eviction for the sole purpose of delaying the state legal process. When the threat passes, they dismiss their cases, only to file again when the mortgagee or landlord brings another legal action to seize control of the property. The ability to file repeatedly for Chapter 13 relief increases a debtor's leverage in negotiations with creditors. In regions where this problem is particularly acute, judges have devoted significant time and resources to developing tools to address this problem.

*Id.* (quoting Nat'l Bankr. Comm'n, Report of the National Bankruptcy Review Commission (Oct. 20, 1997) § 1.5.5, text accompanying nn. 731-33 (footnotes omitted), *available at*

http://govinfo.library.unt.edu/nbrc/reportcont.html (last visited April 27, 2009)). The Commission suggested limitations on the automatic stay in successive filings "so debtors would be discouraged 'from filing a non meritorious . . . petition on the eve of a foreclosure sale merely to stay the sale . . . one of the most frequently cited uses of repeat Chapter 13 filings.'" *Id.* (quoting Nat'l Bankr. Comm'n, Report, text accompanying n. 744).

The House and Senate reports for their respective bills are similar to the legislative history for BAPCPA and do not contain any distinctions between actions against the debtor, the debtor's non-estate property, and the debtor's estate property. *Id.* at 328-29. By tracing the origins of what finally became § 362(c)(3)(A), the *Daniel* court concluded reasonably that this provision "was intended to stop the bad faith successive filing of bankruptcy cases from interfering with real estate foreclosures. This purpose would not be advanced by a provision that left the stay in effect as the debtor's pre-bankruptcy real estate." *Id.* at 329.

Benefitting from the wisdom of courts that have analyzed § 362(c)(3)(A) in the dozen years since *Jones*, the court conclusively deviates from this precedent and adopts the minority position[5]. The court is not the first to make a 180-degree turn on the issue. In *Bender*, Judge Grossman did not follow his colleague's adoption of the majority view that that termination of the automatic stay under § 362(c)(3)(A) does not apply to property of the estate. *See In re Hale*, 535 B.R. 520, 527 (Bankr. E.D.N.Y. 2015). Since the hearings in the present case, the Honorable Colleen A. Brown of the United States Bankruptcy Court for the District of Vermont reversed her own prior interpretation (and not that of a another judge in this district) that § 362(c)(3)(A) operates to terminate the automatic stay as to actions taken against the debtor or property of the debtor, and

---

[5] The original Order included the phrase "for this district." This matter was not heard *en banc* and is not binding on the other judges in this district. The use of the phrase "for this district" was intended to signal a diversion from the prior opinions of the court.

not with respect to actions taken against property of the estate, and instead held that the stay terminates in its entirety 30 days after an order for relief. *In re Goodrich*, 587 B.R. 829 (Bankr. D. Vt. 2018), *abrogating In re McFeeley*, 362 B.R. 121 (Bankr. D. Vt. 2007).  Judge Brown based her ruling in part on an extensive analysis of legislative intent derived not only from legislative history applicable directly to § 362(c)(3)(A), but also from cases in which the United States Supreme Court found the congressional intent behind BAPCPA provisions relevant even when the statutory language is unambiguous, thus eliminating the obligation to consider legislative history. *Id.* at 840 (citing *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231-32 (2010); *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64, 71 (2011)).

### c. The *Bender* Approach

Until recently, most cases interpreting the phrase "with respect to the debtor" in § 362(c)(3)(A), whether adopting the majority or minority position, did not address separately Judge Small's interpretation in *Paschal* of the words "action taken."  In *Bender*, however, the court analyzed the entire subsection and implemented a hybrid approach of agreeing with the minority that "with respect to the debtor" does not limit the termination of the automatic stay as to property of the estate but following *Paschal* in finding that the termination is limited to the continuation of formal "actions taken" prior to the bankruptcy filing. *Bender*, 562 B.R. at 583.

In *Goodrich*, Judge Brown divided her consideration of § 362(c)(3)(A) into three options which she called the majority approach, the minority approach, and the *Bender* approach. Although urged by the moving creditor to adopt the *Bender* approach, she concluded that Congress intended § 362(c)(3)(A) to serve as a significant deterrent to bad-faith repeat filers by terminating after 30 days *all* protections of the automatic stay provided by § 362(a). *Goodrich*, 587 B.R. at 848.  Contrarily, Judge Grossman agreed with Judge Small that—

> Congress's use of the phrase "action taken" in contract to "act" used elsewhere in the statute should not be ignored. In addition, [the *Paschal*] interpretation of the statute is consistent with this Court's view that § 362(c)(3)(A) was intended to apply and shift the burden from the creditor to the debtor in cases where, as here and in many cases, a debtor uses bankruptcy in order to stymie judicial, administrative or other proceedings with respect to debts, property securing such debts and leases.

*Bender*, 562. B.R. at 583. This court sees merit in both positions. While leaning toward agreement with the *Bender* approach, the court will for now leave the *Paschal* interpretation of the phrase "actions take" undisturbed in the interest of *stare decisis*, because the results in this case would be the same under either interpretation. As noted *supra*, both CFCU's foreclosure proceeding and Mr. Dev's equitable distribution action qualify as "actions taken" as that phrase is interpreted by *Paschal*.

In *Goodrich*, the court's reversal of its interpretation of § 362(c)(3)(A) was prompted by a secured creditor's motion for reconsideration of *McFeeley*. Judge Brown recognized that the debtor relied justifiably upon *McFeeley* when it chose not to move to extend the automatic stay under § 362(c)(3)(B) as to the collateral property of the estate and, therefore, exercised her powers under § 105[6] to grant the debtor 30 days to seek such an extension *nunc pro tunc*. *Goodrich*, 587 B.R. at 848-49. The court does not find the need to extend the same courtesy to the Debtor in this case, making the CFCU Stay Motion moot. Even if the automatic stay were in place, the CFCU Stay Motion presents sufficient cause for granting relief from the stay under § 362(d)(1). The Debtor is almost three years in arrears in her obligations under the Note, and the Debtor has no meaningful non-exempt equity to protect through a Chapter 13 plan. The parties came to this hearing with an agreement to condition continuance of the automatic stay, and they are free to negotiate a similar forbearance of foreclosure outside of the protections of this court.

---

[6] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

B. Applicability of the Co-debtor Stay to *In Rem* Actions

Although CFCU's request for relief from the automatic stay is mooted by this court's determination that the stay terminated under § 362(c)(3)(A), CFCU presented a separate request for relief from the co-debtor stay imposed by § 1301.  In an opinion issued prior to *Bender*, Judge Grossman determined that the termination of the automatic stay pursuant to § 362(c)(3)(A) does not likewise terminate the co-debtor stay. *In re Lemma*, 393 B.R. 299, 304 (Bankr. E.D.N.Y. 2008). He first noted that "[p]rior to the enactment of BAPCPA, courts consistently found that the co-debtor stay imposed by section 1301 was unrelated to the stay imposed by section 362(a)." *Id.* at 303 (citations omitted).  The court declined reference to legislative history, finding the statutory language clear:

> There is no language in section 362(c)(3) that states or implies that when the stay terminates automatically with respect to the debtor by reason of his prior filings, the co-debtor stay terminates as well.  Similarly, section 1301 sets forth the instances when the co-debtor stay applies as well as exceptions to those instances; the termination of the automatic stay pursuant to section 362(c)(3) is not a listed or implied exception.

*Id.* at 304. *See also King v. Wells Fargo Bank, N.A. (In re King)*, 362 B.R. 226 (Bankr. D. Md. 2007) (holding that the co-debtor stay was not affected in cases where the automatic stay did not go into effect pursuant to § 362(c)(4) because the debtor had two previous cases dismissed within the year prior to the current petition).  The court agrees and will consider CFCU's request for relief from the co-debtor stay.

This court routinely entertains requests for relief from the co-debtor stay in tandem with requests for relief from the automatic stay by mortgage creditors seeking to foreclose real property collateral, and although seeking co-debtor stay relief is the standard practice in this district, the court questions whether the co-debtor stay even applies to prevent a foreclosure sale.  The co-debtor stay dictates that—

19

[e]xcept as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, *to collect all or part of a consumer debtor from any individual* that is liable on such debt with the debtor, or that secured such debt, unless—

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a) (emphasis added).  As noted by the United States Bankruptcy Court for the Northern District of Illinois, the plain language of § 1301(a) most closely parallels the *in personam* protection of § 362(a)(1) and does not afford *in rem* protection. *In re Whitlock-Young*, 571 B.R. 795, 807 (Bankr. N.D. Ill. 2017).  That court found, however, that the co-debtor stay did preclude a "*quasi in rem*" mortgage foreclosure proceeding in Illinois, because:

[o]ne of the pivotal differences between *in rem* and *quasi in rem* actions is whether the defendant is the property or a named person.  In *in rem* actions, the property itself is the defendant, while in *quasi in rem* actions, a named party is the defendant. In a foreclosure action, the property is not the defendant.  Rather, the mortgagor, the person whose interest in the real estate is the subject of the mortgage, is a necessary party defendant to the foreclosure proceedings.  As such, the proceeding must be brought against a named party and a foreclosure action must be a *quasi in rem* action.

*Id.* (quoting *ABN AMRO Mortg. Group, Inc. v. McGahan*, 237 Ill.2d 526, 535-36, 342 Ill.Dec. 7, 13, 931 N.E.2d 1190, 1196-97 (2010) (citations omitted)).

Unlike in Illinois, a foreclosure of real property in North Carolina is conducted generally under a power of sale clause in the deed of trust, and while mortgagors are statutorily entitled to notice of the proceedings, they are not named defendants or parties to the action. *See* N.C. Gen. Stat. § 45-21.1 *et seq.*  A foreclosure under a power of sale pursuant to Chapter 45 of the *North Carolina General Statutes* is more akin to a true *in rem* action that may not be stayed under § 1301(a).  The court declines to consider fully the issue, and in either case, relief from the co-

debtor stay is necessary to seek collection of any foreclosure deficiency against Mr. Dev personally.[7]  Such relief is proper to the extent that—

> (1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;
>
> (2) the plan filed by the debtor proposes not to pay such claim; or
>
> (3) such creditor's interest would be irreparably harmed by continuation of such stay.

11 U.S.C. § 1301(c).  The termination of the automatic stay as to CFCU under § 362(c)(3)(A) prevents effectively the Debtor from paying CFCU's claim under the Note through a Chapter 13 plan, constituting cause for relief from the co-debtor stay pursuant to § 1301(c)(2).  Additionally, relief is appropriate under § 1301(c)(3), because CFCU has been harmed by the Debtor's repeated bankruptcy filings which have frustrated CFCU's foreclosure efforts, and this harm may be irreparable if CFCU is further stayed by § 1301(a).

### IV. CONCLUSION

The automatic stay imposed by § 362(a) with respect to Mr. Dev's equitable distribution action against the Debtor and with respect to CFCU's foreclosure of the Property terminated under § 362(c)(3)(A) on March 15, 2018, which is 30 days after the Debtor's petition.  This termination did not likewise terminate the co-debtor stay imposed by § 1301(a), but to the extent that the co-debtor stay precludes foreclosure of the Property or collection on the Note from Mr. Dev, relief is appropriate under § 1301(c).  Although not addressed at the hearing, the court agrees with the Debtor that Mr. Dev has failed to state a viable claim for recovery of damages from the Debtor; now therefore,

---

[7] The title of the CFCU Stay Motion specifically uses the words "*in rem*," suggesting that CFCU is only seeking relief to pursue *in rem* actions, but that title also fails to reference the co-debtor stay in addition to the automatic stay. It is logical to assume that CFCU would want to seek collection of any foreclosure deficiency from Mr. Dev, so the court will assume that *in personam* relief is also desired.

It is ORDERED, ADJUDGED, and DECREED as follows:

1.     Mr. Dev's request for relief from the automatic stay be, and hereby is, denied as moot;

2.     Mr. Dev's request for imposition of sanctions against the Debtor be, and hereby is, denied;

3.     CFCU's request for relief from the automatic stay be, and hereby is, denied as moot; and

4.     CFCU's request for relief from the co-debtor stay be, and hereby is, granted.

**END OF DOCUMENT**